## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 46973

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **Boise, August 2019 Term** |
| Plaintiff-Respondent, | ) | |
| | ) | **Opinion Filed: October 7, 2019** |
| v. | ) | |
| | ) | **Karel A. Lehrman, Clerk** |
| GILBERT ALEXANDER GONZALES, JR., | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Lansing L. Haynes, District Judge.

The District Court's order denying Gonzales' motion to suppress is reversed. Accordingly, the judgment of conviction is likewise vacated.

Eric D. Frederickson, Idaho State Appellate Public Defender, Boise, attorney for Appellant. Jenevieve C. Swinford argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for Respondent. John C. McKinney argued.

_____

BEVAN, Justice

### I. NATURE OF THE CASE

Gilbert Gonzales, Jr., appeals the district court's order denying his motion to suppress evidence obtained following a warrantless seizure. Gonzales was arrested and charged with possession of methamphetamine and introducing or attempting to introduce methamphetamine into a correctional facility. Gonzales moved to suppress, asserting the warrantless seizure was without legal justification and the evidence obtained was fruit of that illegality. The district court denied the motion after finding the seizure was lawful. The Court of Appeals reversed the district court's order denying the motion to suppress. This Court granted the State's petition for review. We now reverse the district court's order denying Gonzales' motion to suppress and vacate the judgment of conviction.

1

## II. FACTUAL AND PROCEDURAL BACKGROUND

At about 1:30 a.m. on March 3, 2017, Officer Joseph Scholten of the Coeur d'Alene Police Department was patrolling a shared parking lot between the La Quinta Inn & Suites and Shari's Restaurant. Both businesses were open. During his patrol, Officer Scholten observed a black Chevy Blazer parked in a dark area between the two businesses. Soon after, Officer Scholten observed a woman exit the vehicle and walk toward the La Quinta entrance. Officer Scholten recognized this woman from recent criminal investigations as Arielle Padel. Officer Scholten was familiar with Padel because she had recently reported her vehicle as stolen from an associate and later reported her vehicle had not been stolen. Additionally, Officer Scholten knew that Padel, among other associates, was suspected of firearm thefts in the area.

Based on the time of Padel's presence in the parking lot, the location of her vehicle in the darkened area, and his familiarity with Padel, Officer Scholten exited his patrol car and tried to speak with Padel. Padel made it clear she did not want to talk and continued to walk toward the La Quinta entrance. Officer Scholten found Padel's behavior abnormal and suggestive of Padel trying to get away from Officer Scholten and her own vehicle. After Padel left, Officer Scholten approached Padel's vehicle from the passenger side, shined his flashlight inside the vehicle and observed a man, later identified as Gonzales, lying on the floor with his head, side, and feet on the floor.[1] At that time, Officer Scholten turned the flashlight and shined it on himself to show Gonzales he was a police officer. Gonzales then exited the vehicle through the driver's side door. As Gonzales exited, Scholten observed Gonzales to be nervous and twitching and he instructed Gonzales to put his hands behind his back so Scholten could pat him down for weapons. Gonzales made a slight movement as if to put his hands behind his back, but then ran away. Officer Scholten followed Gonzales, caught him, detained him, and conducted a pat down for weapons. While detained, Officer Scholten learned Gonzales was on probation and contacted his probation officer who issued an agent's warrant for his arrest. Scholten placed Gonzales under arrest. During a later search at the jail, methamphetamine was found on Gonzales.

The State charged Gonzales with one count of possession of a controlled substance, in violation of Idaho Code section 37-2732(c)(1), and one count of introducing major contraband

---

[1] There is a factual dispute about what Gonzales was doing in the backseat. Gonzales testified he was sitting behind the passenger's seat, texting. Officer Scholten testified Gonzales was lying in a fetal position on the floorboard. The district court found Scholten's testimony more credible and found Gonzales to be lying on the floor.

into a correctional facility, in violation of Idaho Code section 18-2510(3). Gonzales moved to suppress all evidence obtained following the warrantless seizure. Gonzales argued Officer Scholten lacked reasonable suspicion to seize him before or after he fled. The State did not file a response to the motion.

A hearing on Gonzales' motion to suppress was held and the district court orally denied the motion to suppress. The district court determined that Gonzales was detained when Officer Scholten shined his flashlight into the vehicle, revealed he was a law enforcement officer, and may have suggested a need for Gonzales to exit the vehicle. The district court held there was reasonable suspicion for this detention based on Padel's involvement in prior investigations, Padel walking away from Officer Scholten, and Gonzales lying down in the backseat of Padel's vehicle that was located in the darkest part of the parking lot. The district court also found Officer Scholten's reasonable suspicion was "heightened" when Gonzales fled. Finally, the district court determined Officer Scholten had probable cause to believe that Gonzales obstructed and delayed an officer once he fled. Thus, the district court determined the seizures were reasonable. Based on these findings, the district court later issued a written order denying Gonzales' motion to suppress.

Under a Rule 11 plea agreement, Gonzales pleaded guilty to possession of a controlled substance and entered an *Alford*[2] plea to introducing major contraband into a correctional facility. Gonzales reserved the right to appeal the denial of his motion to suppress. Gonzales timely appealed. The Court of Appeals reversed. This Court granted the State's petition for review.

### III. ISSUE ON APPEAL

Did the district court err when it denied Gonzales' motion to suppress?

### IV. STANDARD OF REVIEW

"When reviewing a case on petition for review from the Court of Appeals this Court gives due consideration to the decision reached by the Court of Appeals, but directly reviews the decision of the trial court." *State v. Schmierer*, 159 Idaho 768, 770, 367 P.3d 163, 165 (2016).

When this Court reviews a district court's order granting or denying a motion to suppress, "the standard of review is bifurcated." *State v. Purdum*, 147 Idaho 206, 207, 207 P.3d 182, 183

---

[2]*North Carolina v. Alford*, 400 U.S. 25 (1970).

(2009) "This Court will accept the trial court's findings of fact unless they are clearly erroneous." *Id*. (citing *State v. Watts*, 142 Idaho 230, 232, 127 P.3d 133, 135 (2005)). Even so, "this Court may freely review the trial court's application of constitutional principles in light of the facts found." *Id*. (citing *State v. Diaz*, 144 Idaho 300, 302, 160 P.3d 739, 741 (2007)).

"Determinations of reasonable suspicion are reviewed *de novo*." *State v. Morgan*, 154 Idaho 109, 111, 294 P.3d 1121, 1123 (2013) (citing *State v. Munoz*, 149 Idaho 121, 127, 233 P.3d 52, 58 (2010)). "The review must be based on the totality of the circumstances rather than examining each of the officer's observations in isolation." *Id*. (citing *United States v. Arvizu*, 534 U.S. 266, 274 (2002)).

## V. ANALYSIS

**A.     The district court erred in denying Gonzales' motion to suppress because Officer Scholten lacked reasonable, articulable suspicion to seize Gonzales at the vehicle.**

Gonzales argues the district court erred in denying his motion to suppress on two grounds. First, Gonzales argues the district court should have granted the motion to suppress because Officer Scholten did not have reasonable suspicion to seize Gonzales at the vehicle. Second, Gonzales argues the evidence found at the jail was fruit of the unlawful seizure in the parking lot. The State maintains Officer Scholten had reasonable suspicion to seize Gonzales. Specifically, the State argues Gonzales has failed to show the district court erred in determining that, even if Gonzales was briefly detained in the vehicle, that detention was supported by reasonable suspicion, and even were it not, Gonzales' flight provided new reasonable suspicion to seize him—attenuated from the initial seizure. For the reasons to be discussed below, we hold the district court erred in denying Gonzales' motion to suppress.

### a. The State failed to adequately preserve its argument that Gonzales was seized after he fled and was subsequently caught.

To begin, the State argues that Officer Scholten did not seize Gonzales until after Gonzales took flight. The State asserts that Officer Scholten shining his flashlight into the interior of the vehicle did not transform an otherwise consensual encounter into a seizure. Thus, the State argues suppression is unwarranted because the seizure after Gonzales fled was supported by reasonable suspicion, attenuating any possible illegality that occurred before. On the other hand, Gonzales argues the State conceded the issue of when the seizure occurred before the district court and cannot argue otherwise on appeal.

4

"Issues not raised below will not be considered by this court on appeal, and the parties will be held to the theory upon which the case was presented to the lower court." *State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017) (quoting *Heckman Ranches, Inc. v. State, By & Through Dep't of Pub. Lands*, 99 Idaho 793, 799–800, 589 P.2d 540, 546–47 (1979)). We recently explained, "[w]e will not hold that a trial court erred in making a decision on an issue or a party's position on an issue that it did not have the opportunity to address." *State v. Gonzalez*, 165 Idaho 95, 99, 439 P.3d 1267, 1271 (2019). We require "both the issue and the party's position on the issue [to] be raised before the trial court for it to be properly preserved for appeal." *Id.*

Below, both Officer Scholten and Gonzales testified. The district court, giving more weight to Officer Scholten's testimony, determined:

> The court is going to make a finding that [Gonzales] was very briefly detained, and in the sense that when officer signed (sic) the flashlight in on Mr. Gonzales and then indicated that he was shining it on himself to say he was a law enforcement officer, and may have indicated a need for Mr. Gonzales to get out of the vehicle, that a reasonable person could have viewed that as being detained.

The State did not object to the district court's finding that Gonzales was briefly detained at the vehicle. Even so, the State now argues that Gonzales was not seized until after he fled. According to the State, this argument was adequately preserved at the suppression hearing when the prosecutor explained all the circumstances, up to Gonzales' flight, which gave Officer Scholten reasonable suspicion to detain Gonzales. The prosecutor argued:

> Well, Your Honor it looks like we have a situation here where the officer is - - is in a place where he's lawfully able to be allowed to be, he's in a parking lot during work hours, and he shines a flashlight in the vehicle and sees a person, and he describes squinched up between the front and the rear seat and the floorboard of the vehicle. Apparent - - apparently to him he's hiding.
> He doesn't instruct the person to come out of the car. He signs [sic] the flashlight. He doesn't, according to his testimony, he doesn't pull the gun on this person. This person sees that he has this flashlight shining on him and then exits the vehicle.
> The officer at that point tells him that he wants to pat him down for weapons. The officer's [sic] testified that he intended at that time to conduct an investigation into some suspicious activity that he saw. When, at this point, he had some reasonable suspicion that some criminal activity of some type was taking place of [sic] about to take place. And we have to look at the entirety of the circumstances here.
> When he went to do the weapons pat-down, he didn't even have an opportunity at that point to even find out the identification of this person. He was

5

intending on asking for his identification, run him for any warrants. And the person instead takes off on foot and runs from him. So, that's what we have, Judge. I think that it's a pretty simple issue, and I ask that you deny the motion.

The State asserts that including Gonzales' flight as part of the totality of the circumstances to be considered in determining whether Officer Scholten had reasonable suspicion to seize Gonzales supports its current position that the prosecutor argued Gonzales was seized when he was caught after he fled and at no time before. We disagree.

This Court accepts the trial court's findings of fact unless they are clearly erroneous. *State v. Purdum*, 147 Idaho 206, 207, 207 P.3d 182, 183 (2009). Thus, we accept the district court's finding that Gonzales was first seized when Officer Scholten shined his flashlight into the vehicle and then a later seizure occurred after Gonzales fled. At no time before this appeal did the State contest this finding. Even assuming the State's argument regarding the totality of circumstances leading to the flight implied the initial contact at the vehicle was not a seizure, an issue only mentioned in passing and unsupported by any cogent argument or authority is not preserved for appeal. *See Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010). The State thus failed to preserve its argument that Gonzales was not seized until after he fled and we decline to entertain the argument and any arguments stemming from this theory now.[3]

> b. *Officer Scholten did not have reasonable suspicion to seize Gonzales at the vehicle.*

The district court found Officer Scholten had reasonable suspicion to seize Gonzales at the vehicle based on these facts: 1) Padel parked her vehicle in a dark area of a parking lot late at night; 2) Officer Scholten knew Padel and knew she was involved in an ongoing theft investigation; 3) Padel walked away from Officer Scholten when he tried to speak with her; and 4) Officer Scholten observed Gonzales crouched down in the backseat of Padel's vehicle. According to the district court, under the totality of the circumstances approach, these factors

---

[3] Evidence obtained in violation of the Fourth Amendment is subject to the exclusionary rule, which requires unlawfully seized evidence to be excluded from trial. *See, e.g., Wong Sun v. United States*, 371 U.S. 471, 485 (1963); *State v. Page*, 140 Idaho 841, 846, 103 P.3d 454, 459 (2004). One exception to the exclusionary rule is the attenuation doctrine. *See Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016). Based on the State's unpreserved argument that Gonzales was not seized until after he fled, the State further argues that even if the initial seizure at the vehicle was illegal, the evidence should not be suppressed under the attenuation doctrine. However, the State did concede the seizure at the vehicle was illegal below and thus made no argument about the attenuation doctrine at that time. Thus, we decline to entertain this argument on appeal.

6

were enough to provide Officer Scholten with reasonable suspicion to seize Gonzales at the vehicle. We disagree.

Under the Fourth Amendment of the United States Constitution, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. "The Fourth Amendment's reasonableness requirement has been held to apply to brief investigatory detentions." *State v. Bishop*, 146 Idaho 804, 811, 203 P.3d 1203, 1210 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 19 (1968) (explaining an investigatory seizure is permissible if it is based on specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity). "The quantity and quality of information necessary to establish reasonable suspicion is less than that necessary to establish probable cause." *Id*. (citing *Alabama v. White*, 496 U.S. 325, 330 (1990)). "Still, reasonable suspicion requires more than a mere hunch or 'inchoate and unparticularized suspicion.' " *Id*. (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). "Whether an officer possessed reasonable suspicion is evaluated based on the totality of the circumstances known to the officer at or before the time of the stop." *Id.* at 811, 203 P.3d at 1210 (citing *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003)).

Not every suspicious or abnormal behavior is sufficient to establish reasonable suspicion. *See State v. Bly*, 159 Idaho 708, 711, 366 P.3d 193, 196 (Ct. App. 2016). The officer must be able to articulate more than an "inchoate and unparticularized suspicion or 'hunch' " of criminal activity." *Illinois v. Wardlow*, 528 U.S. 119, 123–24 (2000) (quoting *Terry, supra,* at 27). An officer conducting an investigatory stop . . . must articulate "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez,* 449 U.S. 411, 417–418 (1981). That determination, the U.S. Supreme Court admonished, "becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances." *Terry,* 392 U.S. at 21. In undertaking that neutral scrutiny, "the relevant inquiry" concerning the inferences and conclusions a court draws "is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Sokolow,* 490 U.S., at 10. The district court here performed this neutral inquiry, but erred in finding reasonable suspicion based on the facts.

7

"An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable particularized suspicion that the person is committing a crime." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Similarly, an individual's proximity to others suspected of or associated with criminal activity, without more, is also insufficient. *See Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) (stating that the standard applied in order to search or seize a person must be particularized to that specific individual). Even more, an individual exercising their right to refuse to speak with law enforcement, on its own, is insufficient to support a finding of reasonable suspicion. *Florida v. Royer*, 460 U.S. 491, 498 (1983) (stating a person "may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish these grounds."). Even so, innocent acts, when considered together, may be suspicious enough to justify an investigative detention if an officer points to articulable facts that the individual is engaged in criminal activity. *Sokolow,* 490 U.S. at 9–10; *State v. Neal,* 159 Idaho 919, 925, 367 P.3d 1231, 1237 (Ct. App. 2016).

Here, none of the factors alone or when taken together provided Officer Scholten with reasonable suspicion to seize Gonzales when he found him in the vehicle. Gonzales' location, even in a dark area, late at night, is not a sufficient basis for finding reasonable suspicion. *Wardlow*, 444 U.S. at 124. There is no evidence that the parking lot where Padel parked her vehicle was a high-crime area; even if it were, the mere parking of Padel's vehicle between two businesses during operating hours, albeit late at night and in a dark area, is insufficient to support a finding of reasonable suspicion. *Id*. Additionally, Padel's decision not to speak with Officer Scholten cannot be considered when evaluating reasonable suspicion to detain Gonzales because Padel had every right to refuse to speak with Officer Scholten. *Royer*, 460 U.S. at 498. Even more, Officer Scholten's knowledge of Padel and familiarity with Padel's previous interactions with law enforcement is not sufficient to justify reasonable suspicion *in regards to Gonzales*. *See Ybarra*, 444 U.S. at 91 ("a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person."). Gonzales' proximity to Padel is not an adequate reason to transfer the officer's suspicion about Padel to Gonzales. Indeed, the State concedes in its briefing that the past theft investigations and avoidance behavior of Padel were alone insufficient to justify Gonzales' seizure at the vehicle.

While we agree that finding an individual horizontal on the floor of a vehicle may be suspicious, without more it cannot be a sufficient basis on which an officer finds reasonable

suspicion of criminal activity. *See Wardlow*, 444 U.S. at 124; *see also Bly*, 159 Idaho at 195, 366 P.3d at 195. The fatal flaws in the State's case are that Officer Scholten never *articulated* what *criminal* suspicion he had of Gonzales' behavior, other than the fact that Gonzales was perhaps hiding from him. As we have iterated above, an officer must "articulate a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. at 417–418. Here, the officer failed to articulate what suspicion of criminal behavior he had that led him to direct the flashlight onto himself and detain[4] Gonzales.

As a result, we hold the district court erred in finding Officer Scholten had reasonable suspicion to detain Gonzales at the vehicle. The district court thus erred in denying Gonzales' motion to suppress.

### VI. CONCLUSION

For these reasons, this Court reverses the district court's order denying Gonzales' motion to suppress. Accordingly, the judgment of conviction is likewise vacated.

Chief Justice BURDICK and Justices BRODY, STEGNER and MOELLER, CONCUR.

---

[4] There was some dispute during oral argument about the district court's finding regarding this detention, and whether the officer ordered Gonzales out of the car. For purposes of our analysis we accept the district court's findings as true where they are supported by substantial evidence. *State v. Wolfe*, 445 P.3d 147, 150 (Idaho 2019) Here the record contains facts which support the court's conclusion that the officer "may have indicated a need for Mr. Gonzales to get out of the vehicle . . . ." While the conditional nature of this finding is inexact, it is still supported by the record and we thus accept the finding that Gonzales was ordered out of the car by Officer Scholten. Thus, this would constitute a seizure for Fourth Amendment purposes.